R. E. HALSELL v. MERCHANTS UNION INSURANCE CO.

[62 South. 235-645.]

STATUTES. *Special legislation. Interest. Laws 1912, chapter 167. Constitution 1890, section 90.*

Laws 1912, chapter 167 entitled "An act providing for the organization, regulation and supervision of domestic and foreign building and loan associations, or domestic or foreign corporations, whose business is loaning money on real estate, to be repaid in monthly installments of principal and interest," is an effort to confer special immunities and privileges upon certain defined associations, engaged in the ordinary business of loaning money and is violative of constitution 1890, section 90 prohibiting local, private or special laws regulating the rate of interest on money.

OPINION ON SUGGESTION OF ERROR.

STATUTES. *Special legislation. Interest. Building and loan associations. Laws 1912, chapter 167.*

Under the laws 1912, chapter 167, the right of building and loan associations to do business and collect a rate of interest greater than the general law authorizes, depends upon three conditions, not imposed upon ordinary loans of money, to wit: 1. The security must be real estate. 2. The loans must not be payable in less than two years. 3. Loans to be paid in equal monthly installments. And these things differentiate the business of building and loan association from other lenders of money, so that the permission to charge interest at ten per cent. does not violate the constitution of 1890, section 90, prohibiting special laws regulating the rate of interest on money.

APPEAL from the chancery court of Jones county.
HON. SAM WHITMAN, Chancellor.

Suit by R. E. Halsell against the Merchants Union Insurance Company. From a decree sustaining a demurrer to the bill of complaint, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*R. E. Halsell,* for appellant.

Under the laws of 1912, page 301, chapter 229, a general law was passed, reading as follows: "The legal rate of interest on all notes, accounts, and contracts, shall be six per cent per annum, but contracts may be made in writing for a payment of a rate of interest as great as eight per cent per annum. And if a greater rate of interest than eight per cent shall be stipulated for, or received in any case, all interest shall be forfeited, and may be recovered back, whether the contract be executed, or executory." This act was passed by the Legislature of 1912, and was approved by the Governor February 24, 1912, and therefore became a law of the state.

The above act is a general act, and the only act regulating the rate of interest that the Legislature of the state could pass, and this act was passed in accordance with section 90 of the Constitution, which provides that the Legislature shall not pass local, private, or special laws, regulating the rate of interest, and the above mentioned act is covered by the above section of the Constitution.

Later without having repealed chapter 229 the Legislature of 1912 passed a law known as the Building and Loan Association Law, and this will be found on page 176, chapter 167 of the laws of 1912. This latter act was passed, and approved on the sixteenth day of March, 1912, and by this latter act the appellee claims the right to collect from complainant ten per cent per annum, as interest on the loan, which rate is usurious and in violation of the laws of the state of Mississippi, besides the act of March 16, 1912, at page 176, is a special act and violates section 90 of the Constitution. The act of February 24th is the only valid legal act regulating the rate of interest, and the building and loan act is void, and cannot be enforced.

Appellant also contends that the act is void, that is, the act of 1912, chapter 167, for the reason that only as-

sociations, companies and corporations, etc., are allowed
the privilege to do business under that chapter, thereby
placing a restriction on individuals deriving the benefits
given by section nine of the act, and an individual not
being an association, that is, I do not see how it is pos-
sible, one individual can call himself an association, is
prohibited from lending money in the same way, and
charging the same rate of interest as the building and
loan company, and this act violates the fourteenth amend-
ment of the constitution of the United States, because it
denies to individuals the equal protection of the laws, and
abridges the privileges, and immunities of the individ-
ual to his detriment, and in favor of a preferred class.
The act is therefore what we would term class legisla-
tion.

For the above reasons we think the contract in this
case cannot be enforced, and that the demurrer ought to
have been overruled.

*Mayes & Mayes* and *Price & Price,* for appellee.

On examining the opinion written by the court, as we
understand it, it holds this law violative of the constitu-
tion of the state, because it allows associations and com-
panies to engage in the business authorized by the act,
when their business does not fall within the definition of
what constitutes a building and loan association, as de-
fined by Thompson on Building and Loan Associations,
sec. 2, 6 Cyc., 120, and as defined by Mr. Erlich in sec.
1, Laws on Building and Loan Associations, written by
him.

We think the decision of the court is unsound. When
the court examines the act and keeps in mind the fact
that the Legislature passed the act for the purpose of
encouraging a certain character of loans to be made, we
think the difficulty which the court encountered in inter-
preting this act, will be entirely dissipated.

In the first place, the act is designed to promote the
building of homes, and to allow people to pay for those

homes without incurring large obligations to be paid at
a particular time.  In other words, to allow them to pay
for those homes by the payment of certain monthly in-
stallment of principal and interest, approximating about
what would have been paid if persons obtaining the loans
were paying rent.  The whole act makes the right to
charge this ten per cent interest dependent not upon the
person who is engaged in making the loan, but the char-
acter of the loan made to such person.  That is to say,
the way in which it is to be repaid.  This is the classifica-
tion the act makes, and the classification is not upon the
persons who may engage in this character of business,
but upon the business itself.

Now, the greater number of persons that are engaged
in this business authorized by this act, the smaller, nec-
essarily, will be the interest rate which they will have to
pay, because the effect of competition is to reduce cost.
If the legislature had the right to say a building and
loan association could loan money to its members at a
greater rate of interest than the general law prescribing
the rate, it then had the additional right to say what
should be considered a building and loan association, and
this is what the Legislature did say, and all it said.

When it is once conceded that the Legislature has the
power, under the constitution of the state, to allow a
building and loan association, because of the character
of the loan it is making, to charge a rate of interest in
excess of that allowed by the general law, then it must
necessarily follow that it had the right within the mean-
ing of the act, provided only that every person must en-
gage in making the same character of loans, and pay in
the same way.  In other words, the law aimed at en-
couraging loans to be made principal and interest pay-
able monthly, and it was not concerned in narrowing the
right of those who should engage in this particular busi-
ness.  The more in the business, the better it would be
for a borrower.

Why should the court held this law unconstitutional, because it allowed persons to engage in this business not included within the ordinary definition of what constitues a building and loan association. The thing which gave the name to building and loan associations, was the character of business which it was engaged in. The name was not given to it because of the particular character of corporation, or association which was engaged in this business, but the name arose out of the character of business done. If John Smith is engaged in the same char.acter of business, why may not the Legislature say that John Smith, in so far as this act is concerned, shall be called a building and loan association? The truth is, the interest of the borrower is better subserved by the persons loaning money, who, in truth, loan to persons not members of any association. This is so, because where one is a member of the building and loan association, he frequently has to buy his money; that is to say, bid a premium for it. In addition to this, he must pay the interest also. All these features are eliminated, and the borrower is only required to pay the stated interest where the person or association is engaged in the character of business named by the act, and loans to persons not having any membership with them.

When the court holds that only building and loan associations dealing with its membership, can engage in this character of business, the effect of the decision is to drive out of the state the most desirable class of associations, or persons, engaged in the business, for the reason that to deal with them requires a payment of nothing except the interest; that is to say, not bidding any premium in addition to the payment of the interest.

We think the distinction drawn by the court in declaring this act unconstitutional, because it allows associations, partnerships and persons to engage in the business not falling within the definition of what heretofore has constituted a building and loan association, is un-

sound.   The Legislature had a right to define what a building and loan association should be; it had a right to repeal the definition which Mr. Erlich made, or Mr. Thompson, or Cyc., or any other law book written prior to this act, and to establish for itself its own definition.

The court concedes that the Legislature has the power to make certain exceptions as to the rate of interest charged when applied to a certain class of loans, without violating section 90, paragraph D, of the constitution. We think there can be no doubt about the validity of a law which allows persons engaged in certain classes of business to charge a little higher rate than is allowed by the general law, even under a constitutional provision like ours.

The truth is, no authority can be found to the contrary, and the contemporaneous construction on this section of the constitution, shows what has been the policy of our jurisprudence on this question.

Immediately following the adoption of the constitution of 1890, sec. 2340, Code 1892, fixed the rate of interest but allowed an exception in favor of building and loan associations domiciled in the state.   So that we feel that we can say with confidence that the Legislature did have power to make this distinction, and that when it did so, the constitution was not violated.

It is not unusual for the Legislature to create for itself what shall be the definition of a particular word. It may narrow it, and it may broaden it.   The Legislature broadened what was meant by the words "building and loan association," from the meaning as defined by text-book writers heretofore.   But this had nothing to do with the essential thing which the Legislature was driving at, and that was, to encourage certain classes of loans by allowing persons engaged in that kind of business to charge a little higher interest rate.   The privilege is granted to the business, and it is the business engaged in which promotes the good which the Legislature de-

signed to accomplish by allowing this privilege. When the legislature made this provision, it looked beyond the persons who were engaged in it, and it was not only designed to benefit them, but it was to provide an inducement to get persons to engage in this kind of business for the good that it might do the general public.

Now, as illustrative of what we say above, if the court will turn to Vol. 22 of Cyc., it will see that Cyc., as do other books, defines an insurance company to be ''a corporation or association whose business is to make contracts of insurance;'' that is the text-book definition. Our statute changed that, and by section 2559, Code 1906 it says that ''Indemnity companies, corporations, individuals, etc., are insurance companies within the meaning of this chapter.''

Would the court say that the Legislature did not have the power to so define the law? And note it says that individuals, even, are insurance companies within the meaning of the law. In the ordinary acceptance of what is meant by an individual, the idea of it ever meaning an insurance company is unthinkable, and yet, the legislature has said that an individual engaging in insurance, shall be an insurance company within the meaning of the chapter, and subject to it. This section of the Code was construed in State v. Alley, 96 Miss. 720.

Now, again, the laws of 1908, page 71 declare the term ''railroad'' applies to every person, firm, etc., owning and operating a railroad, and further says that the term ''company'' 'embraces every person, firm, etc., operating a telegraph or telephone line, etc.

Would the court say that the Legislature did not have the right to declare that the definition of railroad should include what it says it does, as a matter of law, or that the Legislature did not have the power to expend the word ''company,'' to include within its meaning persons, etc.?

Yet, in ordinary conversation, a person insisting that the word ''railroad'' or ''company'' meant such a thing

as the Legislature has declared it shall mean under the statute of this state, would be laughed to ridicule.

With these examples before us, will the court say that the Legislature, which it concedes has the power to make discriminations in rate of interest to be charged, in favor of certain classes of business, did not have the power to say that this discrimination should be made in favor of building and loan associations, and further say who shall be included within the definition of building and loan associations as used by the Legislature?

We think when the court reconsiders this case, that it will adopt our view, and recede from their present opinion.

In the conclusion of the court's opinion, it goes on to define what it meant by a building and loan association, and then it concludes.

"The facts of this case illustrate the character of the Legislature which we are here considering. Stripped of its details and of its regulations, supervisions and license feature, we find an effort to confer special immunities and privileges upon certain defined associations engaged in the ordinary business of loaning money. This is to be accomplished by naming the preferred classes building and loan associations."

This is the place where the court drops into error. The court states that these people are engaged in the ordinary business of loaning money. This is a mistake. They are engaged in the ordinary business of loaning money, in one sense, but they are also engaged in the unusual method of loaning money to be repaid in monthly instalments. The court is mistaken, when it says that the law is designed to confer special immunities and privileges upon this character of persons, simply by naming them building and loan associations. They are named building and loan associations, and the right to charge ten per cent. interest is legalized, because they are engaged in loaning money to have it repaid in monthly in-

stalments, which is not the ordinary method of loaning money.

The court is again mistaken, in our judgment, when it says that the classification is artificial and imaginary in order to create a preferred class. This is not the object of it, but the classification is made broad enough to allow anybody and everybody who is willing to loan money to be repaid this way, to engage in the business, rather than to prohibit any building and loan association to engage in it, thus preventing a creation of a preferred class, instead of promoting. In other words, if the Legislature had only allowed building and loan associations, proper, to engage in this class of business, it might well be contended that they had created a preferred class, but the Legislature did not do this. Irrespective of classes or associations, it allowed every person engaging in the class of business which was allowed to charge ten per cent. interest, to have the benefit of the law, and did not restrict it to one class only.

Cook, J., delivered the opinion of the court.

It appears from the record before us that appellant filed a bill of complaint in the chancery court of Jones county, alleging that he was the owner of certain described real estate and, being desirous of borrowing five hundred dollars, he applied to the Merchants' Union Insurance Company, appellee, for a loan, offering said real estate as security for the payment of the borrowed money. It is also alleged that appellee loaned him the money taking, as security, a mortgage on the land, the loan to be paid in monthly payments fixed by the contract, and the interest charged being at the rate of ten per cent. per annum. The bill charges that the rate of interest which he contracted to pay is usurious.

The bill admits that appellee is a building and loan association, within the definition of section 2, chapter 167, of the Laws of 1912, but charges that said chapter is.

invalid, because in violation of section 90 of the Constitution, providing that the Legislature shall not pass "local, private, or special laws . . . regulating the rate of interest on money." The bill prays for a cancellation of the contract, and for an injunction restraining appellee from attempting to enforce same. A demurrer was interposed and sustained.

The question presented by the briefs of counsel is the validity of chapter 167 of the Laws of 1912, entitled "An act providing for the organization, regulation and supervision of domestic and foreign building and loan associations or domestic or foreign corporations, whose business is loaning money on real estate, to be repaid in monthly installments of principal and interest." This act provides in some detail the method for the supervision and regulation of the associations and corporations mentioned therein. Section 2 of the act is as follows: "The term 'building and loan association,' as used in this act, shall apply to and include domestic and foreign corporations, companies, savings associations, societies or associations organized for the purpose of enabling its members, or borrowers who are not members, to acquire real estate, make improvements thereon, remove incumbrances therefrom or loan money to be repaid in monthly installments, or for the accumulation of a fund to be returned to its members who do not obtain advances thereon." Section 9 of the act reads thus: "All associations, whether foreign or domestic, now organized, or that may hereafter be organized, shall be permitted to contract for loans to its members, or to applicants or borrowers who are not members in this state at a rate of interest not to exceed ten per cent. per annum, payable in equal monthly installments for the average time or duration of such loans, but to not be of less duration than two years."

It is urged by appellee that the act in question is neither a local, private, nor special law, but is a general

law applicable to all who come within the classification prescribed by section 2. For the purpose of this decision it may be admitted that the business of a building and loan association falls within a class peculiar to itself, and that the Legislature, in the exercise of the police power, could confer upon such associations the privilege of charging a greater rate of interest upon its money than others are permitted to contract for. What are the distinguishing features of a building and loan association, which places this sort of organization in a class to itself? "The building association, as now existing, is a private corporation, designed for the accumulation by the members of their money by periodical payments into its treasury, to be invested from time to time in loans to the members upon real estate for home purposes, the borrowing members paying interest and a premium as a preference in securing loans over other members, and continuing their fixed periodical installments in addition, all of which payments, together with the nonborrower's payments, including fines for failure to pay such fixed installments, forfeitures for such continued failure of such payments, fees for transferring stock, membership fees required upon the entrance of a member into the society, and such other revenues, go into the common fund until such time as that the installment payments and profits aggregate the face value of all the shares in the association, when the assets, after payment of expenses and losses, are prorated among all members, which in legal effect cancels the borrower's debt, and gives the nonborrower the amount of his stock." Thompson on Building Associations, sec. 2; 6 Cyc. 120.

Mr. Endlich, in section 1 of Law of Building Associations, has this to say: "The building association is an institution in modern society. Its plan was designed to meet the wants and accommodate itself to the peculiarities of men whose little earnings can be only slowly raised to an effective bulk. It is a creature of legisla-

tive policy, and not of legislative caprice.  In its essential plan and nature, it is the same all over the world, springing from the same considerations, ministering to the same necessities, achieving the same result.  The similarity existing between statutes and usages relating to building associations in the various states and countries is neither accident nor merely imitation.  It is at once the evidence of the recognition of identical requirements of society in the various communities.''

.   Section 2 of the act under consideration does not confine the operations of the associations and corporations defined thereby to its members, but confers a power to loan to ''borrowers who are not members.''  In other words, the building and loan association defined by the act is a new kind of *building association,* in no sense different from corporations and persons following the business of lending money on real estate, except it is not usual with banks and individuals to make contracts providing for monthly installment payments.

A building and loan association proper is composed of its members, and its funds are accumulated from payments made by its members, and are loaned to its members to enable them to build or improve their homes.  It appears that appellant was not a member, but merely a borrower, and so far as the record discloses there is no pretense that the money was loaned to enable him to buy or improve real estate.

The facts of this case illustrate the character of the legislation we are here considering.  Stripped of details, and of its regulation, supervision, and license features, we find an effort to confer special immunities and privileges upon certain defined associations engaged in the ordinary business of loaning money.  This is to be accomplished by naming the preferred class building and loan associations.  The law fixes the contractual limit of interest charges, and it was not within the power of the Legislature to exempt, by special act, the associations

and corporations defined from the general law, under the guise of an artificial and purely imaginary special classification of the preferred class.

*Reversed and remanded.*

### OPINION ON SUGGESTION OF ERROR.

COOK, J.

When the original opinion was filed in this case, the court was of opinion that chapter 167 of the Laws of 1912 violated section 90, par. "d," of the Constitution of the state. It is suggested that we erred, and it is urged that we misinterpreted the act in question; that we failed to give a proper value to some of the provisions of the act.

The gist of the original opinion is embraced in the last two paragraphs of same, viz.:

"The facts of this case illustrate the character of the legislation we are here considering. Stripped of details, and of its regulations, supervision, and license features, we find an effort to confer special immunities and privileges upon certain defined associations, engaged in the ordinary business of loaning money. This is to be accomplished by naming the preferred class building and loan associations.

"The law fixes the contractual limit of interest charges, and it was not within the power of the Legislature to exempt, by special act, the associations and corporations defined from the general law, under the guise of an artificial and purely imaginary classification of the preferred class."

Undoubtedly the Legislature has the power to define a building and loan association, and our former decision does not question this power; but we then thought that the definition of the statute was arbitrary and unreasonable, for the purpose of evading the letter and spirit of section 90 of the Constitution. It seemed to us that the associations bearing the statutory label were in no

essential particular different from all lenders· of money upon the security of real estate, except in the monthly payment feature. Section 90 is both prohibitory and mandatory; local, private, or special laws shall not be passed by the Legislature in the enumerated cases, and the Legislature must pass general laws governing the subjects named.

We said the Legislature obeyed the constitutional mandate by passing general laws "regulating the rate of interest on money," and by chapter 167 of the Laws of 1912, the Legislature attempted, by arbitrary and unreasonable classification, to nullify the constitutional prohibition. This conclusion is challenged by the suggestion of error, and we will now proceed to examine the question anew.

The· act under consideration, in its first section, places all building and loan associations now organized, or hereafter to be organized, under the supervision of the state auditor. Section 2 defines building and loan associations. Section 3 provides for the issuance of the stock of such associations, and how the same may be paid for. Section 4 is as follows: "Foreign building and loan associations and savings associations whose business is to loan money on real estate for a period of not less than two years, to be repaid, principal and interest, in equal monthly installments, may be admitted to do business in this state upon compliance with the conditions of this act."

Sections 5, 6, and 7 relate to the supervisory features of the act; section 8, how unpledged stock may be withdrawn. Section 9 reads this way, viz.: "All associations, whether foreign or domestic, now organized, or that may hereafter be organized, shall be permitted to contract for loans to its members, or to applicants or borrowers who are not members, in this state, at a rate of interest not to exceed ten per cent. per annum, payable in equal monthly installments for the average time or duration of such loans, but to not be of less duration than

two years.'' Section 10 and 11 contain the penal parts of the law.

The distinguishing characteristics of the associations mentioned in the act are: (a) Lending money on real estate: (b) loans to be payable in equal monthly installments for the average time or duration of such loans; (c) loans not to be of less duration than two years; (d) the associations are placed under the supervision of the state. Thus it appears that the right to do business and collect a rate of interest greater than the general law authorizes depends upon three conditions not imposed upon ordinary loans of money, viz.: (1) The security must be real estate; (2) the loans must not be payable in less than two years; and (3) loans to be paid in equal monthly installments.

In the original opinion the only condition noted by us was the monthly payments, and we then believed that the supervision reserved in the state was merely a detail tacked on as an excuse for the granting of special privileges to a fictitious class not enjoyed by the banks and flesh and blood lenders of money. We missed the other distinguishing feature of the law requiring loans to be of not less than two years' duration, which we have now come to believe is a requirement of prime importance, which differentiates the business of these associations from any other class. After a careful reconsideration of the act in all of its details, and in its entirety, we have reached the conclusion that our former views were entirely too narrow, and that we confined the power of the Legislature within restricted bounds not justified by the well recognized rules for the construction of statutes.

We now believe that there were reasons which justified the classification made by the law, and that the act is not repugnant to section 90 of the Constitution, and we therefore affirm the lower court, and decree here that the bill be dismissed.