Common Pleas Court of Knox County.

DWIGHT M. WARNER, ET AL. V. DALMINA ADAMS, ET AL.

Decided February 1, 1934.

L. T. *Cromley*, for plaintiff.
L. C. *Stillwell* and J. R. *Fitzgibbon*, for defendant.

HUSTON, J.

This action was brought by the plaintiffs, receivers of The Centerberg Building & Loan Association Company against some forty different alleged stockholders of the Centerberg Building & Loan Association Company, seeking to recover super-added claimed stock liability.

Defendant, W. A. Wander, and a number of other defendants, have filed demurrer to the petition on the ground that the petition does not state facts sufficient in law to constitute a cause of action against the defendants.

The petition alleges that the plaintiffs are the duly appointed and qualified acting receivers of the Centerberg Building and Loan Association of Centerberg, Ohio, having been appointed by the Common Pleas Court of Knox county, Ohio, and having qualified as such receivers.

The petition further alleges, the receivers were appointed for the purpose of taking over the assets and property of the Centerberg Building and Loan Association Company,

Centerberg, Ohio, and to do any and all things incident and necessary to the proper administration of said trust, and that from the time of their appointment they have been vested with full title and possession of the property and assets of the company.

That the Centerberg Building and Loan Association Company was and is a corporation organized under the laws of the state of Ohio prior to 1931 and did a general building and loan business in the state of Ohio up to the time of the appointment of the receivers, and that at the time of the appointment of the receivers the association was adjudged to be in an unsafe and unsound condition for the transaction of business.

The petition alleges that the assets of the company are inadequate and insufficient to pay its debts and liabilities, and the company is hopelessly insolvent and that it is necessary to collect the full amount of the super-added public liability from owners and holders of capital stock of the association in order to pay its debts and liabilities.

That it has an outstanding capital stock issue amounting to $46,000, divided into four hundred shares of the par value of $100.00 each.

The petition alleges that some of the stockholders have paid or secured to be paid, the double liability assessment, and then sets out a list of the stockholders with the number of shares owned by each, the amount paid and the amount claimed to be due on the super-added liability.

The petition alleges demand and refusal to pay.

The petition further alleges that the Centerberg Building & Loan Association Company was a corporation authorized to receive money on deposit, and that the company did actually receive money on deposit during its operations as a going concern, in an amount which far exceeds the assets of the company, including the collection in full of the super-added. liability of the different stockholders; that the court appointed the receivers and have authorized and directed them as receivers to institute this proceeding against the stockholders for the purpose of collecting the full double liability assessment, and pray for judgment against each of the defendants in the amount as set forth in the petition.

The demurrer admits the truth of the traversable allega-

tions of the petition, and this includes whatever may be implied from the allegations, but only in so far as is necessary to determine the question raised and no further.

It is the claim of the defendants that there is no authority either constitutional or statutory, whereby stockholders of a building and loan association can be required to pay what is commonly known as double liability on stock of an association other than stock of a banking association.

It is conceded that there is no statutory law imposing double liability on holders of stock in a building and loan association, but it is the claim of the plaintiffs that Section 3, Article 13, does impose this obligation on all stockholders of corporations authorized to receive money on deposit.

Section 3, Article 13, of the Constitution of 1851, with amendments as amended September 3, 1912, which is now a part of the Constitution of this state, reads as follows:

"Dues from private corporations shall be secured by such means as may be prescribed by law, but in no case shall any stockholder be individually liable otherwise than for the unpaid stock owned by him or her; except that stockholders or corporations authorized to receive money on deposit shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such corporations, to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares. No corporation not organized under the laws of this state, or of the United States, or person, partnership or association shall use the word 'bank', 'banker' or 'banking' or words of similar meaning in any foreign language, as a designation or name under which business may be conducted in this state unless such corporation, person, partnership or association shall submit to inspection, examination and regulation as may hereafter be provided by the laws of this state."

Our attention has been called to the case of *In re Liquidation of The Miami Savings & Loan Company of Dayton, Ohio,* 31 N. P. (N. S.) 304 [O. L. B. & R. 1-22-34], in which the court uses the following language:

"We are of the opinion that no such liability as is found in the Constitutional provision and is ordinarily designated

double or statutory liability exists in the state of Ohio as against the owner of stock in a building and loan association, although of course, he is always liable for any unpaid subscription on that stock."

We do not have before us the pleadings nor any of the facts involved in the case referred to, and while the opinion no doubt was based on the facts involved in the particular case under consideration by the judge, it is in no wise determinative of the issue made in this case.

Building and loan companies are creatures of law, but the name building and loan association company in no wise indicates with any degree of certainty the manner in which the various building and loan companies of the state of Ohio conduct their business.

Section 9648, General Code, under the provision of the Code regulating building and loan companies, reads as follows:

"To receive money on deposit, and all persons, firms, corporations and courts, their agents, officers and appointees may make such deposits and stock deposits, but such corporation shall not pay interest thereon exceeding the legal rate. When such deposit or stock deposits are made to the joint account of two or more persons, whether adults or minors, with a joint order to the corporation that such deposits or any part thereof are to be payable on the order of any one or more of such joint depositors, and to continue to be so payable notwithstanding the death or incapacity of one or more of the persons making them, such account shall be payable to any one or more of such survivors or survivor or order notwithstanding such death or incapacity. No recovery shall be had against such corporation for amounts paid and charged to such account."

In the case of *Liley Building and Loan Company* v. *Miller, Collector of Internal Revenue,* 280 Federal Reports, page 143, the court had under consideration the question of the liability of the plaintiff association, for the payment of income taxes. Judge Peck, in his opinion discusses the provisions of the General Code of Ohio pertaining to the organization of building and loan associations, in which he distinguishes between those associations which conduct their business, as mutual associations for the benefit of all of

their members, and an association which conducts its business for the benefit of its stockholders. The judge refers to the fact that the association which he had under consideration had three hundred and one stockholders, four hundred and ninety-five borrowers, twenty-two hundred and thirty-nine savings depositors.

On page 144 of the opinion he uses the following language which we think pertinent in the consideration of the question in issue in this case, that is, whether or not the name used by the corporation determined its liability and non-liability, or whether the nature of the business conducted determined the liability or non-liability. The language referred to is as follows:

"It will be observed that about eighty per cent of its receipts and ninety-seven per cent of its loans are transactions with non-members. Thus by far the greater number of those with whom it does business have no interest in its profits, and as long as it remains solvent, they have none of its losses. The earnings accrue to the stockholders. Mutuality of interest between the stockholders, on the one hand and the depositors and borrowers, on the other, is lacking.

"This course of business seems to be within its charter powers as prescribed by the statutes of Ohio particularly Sections 9648 and 9657, General Code. It does not, however, conform to the general conception of the functions of such an association.

"Mutuality is the essential principle of a building association. Its business is confined to its own members; its object being to raise a fund to be loaned among themselves; or such as may desire to avail themselves of the privilege. *Eversman* v. *Schmitt*, 53 Ohio State, 175, 184, 41 N. E. 139, 141 (29 L. R. A. 184, 53 Am. St. Rep. 632.)

"The leading feature of such an association is that its members are kept upon such a strictly co-operative basis, with mutual advantages and benefits, sharing alike in the profits and sustaining their proportionate share of the losses. 4 R. C. L. Building and Loan Associations, page 344.

"In *Halsell* v. *Merchants Insurance Co.*, 105 Miss. 268, 62 South, 235, 645, Ann. Cas. 1916E, 229, a concern organized under the Building Association Act of the state of Mississippi, with powers similar to those exercised by the plaintiff, was held not to be such an association in the real meaning of the term. Having regard, therefore, to its general

character as distinguished from its mere charter powers, there is no doubt that the business conducted was in the main not that of a building association as ordinarily conceived.

"Plaintiff's counsel, however, contend that the definition adopted by the statutes of Ohio of the term "building association" and not that of general usage, is controlling. But it must be remarked that the statutes referred to do not attempt to define a "building association" as distinguished from a "savings association."

"A corporation for the purpose of raising money to be loaned to its members shall be known — as a 'building and loan association' or as a 'savings association.'

"The statutes carry the distinction no further. Both are treated alike. · The same powers are conferred on each. Such a corporation may combine both phrases or parts thereof in its name. It may as truly be said that the corporation is designated as a 'savings association' as a 'building association' by the laws of Ohio. Plaintiff has named itself a 'building association.' It might have named itself a 'savings association.' Its powers, liabilities, structure, character, and place in the law would have been the same. It may even now change its name to a 'savings association.' Would it be exempt as a 'savings association'? If not, would it secure exemptions by such change of name; its character remaining precisely the same?".

Under the provisions of Section 9648, General Code, building and loan associations may receive deposits, and under the provisions of Section 3, Article 13, stockholders of corporations authorized to receive money on deposit, are individually responsible for debts and engagements of the corporation, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares.

That provision of the Constitution was submitted to the people for their approval and its provisions were couched in plain, ordinary, understandable language, about the meaning of which there ought to be no dispute, unless as has been suggested by those opposing the enforcement of the double liability, it was the intention of the members of the Constitutional Convention to limit it to banking corporations only.

The question arises, are we to resort to the minutes of

the proceedings of the convention for the purpose of interpreting the act, or does the act speak for itself.

In the case of *Exchange Bank of Columbus, Ohio,* v. *O. P. Hines, Treasurer of Franklin County,* 3 Ohio State, page 1 the court had under consideration a question involving the interpretation of a provision of the Constitution of Ohio; the question of resort to debates, of the Constitutional Convention, as an aid, in the interpretation of some of its provisions was discussed by the court; on page 46 Judge Bartley uses the following language:

"It is said however, that in the debates of the constitutional convention the idea is nowhere found that deductions from the moneys and credits of individuals would not be permitted. This may be so. I do not know how the fact is. But suppose it be so, what weight should it have against the plain language and manifest spirit of the instrument? None whatever. Upon a doubtful question some respect is undoubtedly due to those debates. No more important body ever sat in the state; perhaps none that contained more learning and ability. But the debates of a body that forms a constitution or law are proverbially unsafe guides for its interpretation. Those who speak are generally few compared with those who vote, and among the debaters themselves there is seldom seen a uniformity of construction. The advocates of a provision are often silent as to some of its necessary results in order to avoid opposition and its enemies sometimes misconstrue its meaning or exaggerate its consequences in order to defeat it. Debates are not always listened to, and a speaker is liable to be misunderstood or misreported. A brief speech on the floor sometimes acquires a wonderful length in print; and reasons that the body never heard may first see the light through the agency of the press. In the meantime the law has been adopted, each member voting upon it according to the light of his own judgment.

For these and other reasons that might be given the debates of even a body that finally enacts a law can seldom be relied on for its true meaning. They can never overcome its plain, unambiguous terms. But the convention was not such a body. It ordained nothing. It merely recommended a constitution to the people, and it is the vote of the latter that the instrument owes all its validity. The question, therefore, is not how did the convention, but how did the people understand it? In order to ascertain this, what guide have we so safe as the plain, natural import of its words"?

An examination of the proceedings of the Constitutional Convention which submitted the amendments, are helpful, in that, it appears from the debates, that building and loan associations as a class, were not intended to be exempt from the provisions of the act; on the other hand, the debates clearly disclose that building and loan associations, that engage in receiving money on deposit as a bank, were intended to be included in its provisions.

A reading of the proceedings and debates, on Proposal No. 93 which was an amendment to Section 3, Article 13 of the Constitution of 1851, reported in Volume 2, pages 1165 to 1187 inclusive of the proceedings and debates of the Convention of 1912 are most interesting and enlightening, on the question raised by the demurrer.

It is apparent that the committee on banks and banking had under consideration two proposals to be submitted as a part of the Constitution, one guaranteeing bank deposits, and the other imposing a double liability, on stockholders of corporations receiving money on deposit; and the committee recommended to the convention Section 3 of Article 13, as finally adopted with the exception that there was added during debate the provisions for inspection of all corporations using the word bank or banking.

Very early in the debate Mr. Wynn of Defiance county, offered an amendment to read as follows:

"Between the words 'corporation' and 'authorized' in line seven, the words 'other than building and loan associations,' the proposal then would read, 'dues from private corporations shall be secured by such means as may be prescribed by law, but in no case shall any stockholder be individually liable otherwise than the unpaid stock owned by him or her; except that stockholders or corporations other than building and loan associations authorized to receive money on deposit shall be held individually responsible, equally and ratably and not one for another, for all contracts, debts, and engagements of such corporations, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares'."

After extended debate, the amendment was defeated.

Time after time during the debate, it was stated very

definitely, that associations doing ·a purely building and loan business, could not be included in its terms by reason of the very language itself. A pure building and loan company does not receive money on deposit, but the debate discussed very definitely that building and loan associations that receive money on deposit are included within its terms.

This act was designed to protect depositors in banks, but when building and loan companies invade the province of banks and accept deposits, they are amenable to its terms.

The name does not necessarily distinguish between the nature of the business conducted by a building and loan and banks. It is not the question of the manner, in which the corporation pays out the money, it is a question of the manner in which they receive it, if a building and loan association receives money in payment of stock, the member becomes a stockholder. If a borrower becomes a member, purchases stock and pays upon the same for the purpose of finally liquidating his loan, he becomes a member and stockholder. If an individual purchased so-called running stock and pays it in installments, he becomes a stockholder to the extent of his purchase, and if the loan company does not receive deposits, then these various stockholders would be liable only to the extent of the stock they had contracted to purchase, but when the stockholders permit their officers or authorize their officers to receive money on deposit, then all members are liable for the debts of the company to the extent of their stockholdings in double the amount of its par value.

In the case of *Bayless, et al.* v. *Baird, Receiver,* 110 Ohio State, page 305, the court had under consideration the right of a borrower, from a building and loan association, to have credited on his mortgage, the amount paid on running stock, at the time the association was declared insolvent and placed in the hands of a receiver.

While the issue in the case under consideration, was not involved in the Bayless case, yet the syllabus of the case, and the language used, by Judge Matthias, in rendering the opinion throws some light, we think, on the attitude of the court as to the obligation assumed by stockholders in the interest of the creditors. The syllabus is as follows:

"1. The members of a building and loan association whether borrowers or non-borrowers, have a mutual interest in its affairs; sharing alike its earnings, they must alike bear its losses.

"A borrowing member of a building and loan association occupies a two fold relation. As a debtor he must repay his loan with stipulated interest; as a stockholder he may participate in the earnings and must contribute to the losses sustained."

On page 308 Judge Matthias, in rendering the opinion uses the following language:

"It is to be borne in mind that we are dealing with a question involving the settlement of the affairs of an insolvent building and loan company for which the statutes have made no express provisions. But the borrower is a member, just as is a non-borrowing subscriber for stock of the company and neither is entitled to any favor or preference in the settlement of the affairs of the company. THEY HAVE EQUAL POWERS AND LIKE RESPONSIBILITIES FOR THE MANAGEMENT OR MIS-MANAGEMENT OF THE ASSOCIATION."

In the above case, the court has said the members of the association are the stockholders, they have a mutual interest in the affairs, and they share alike in the earnings; they must alike bear its losses, and the Constitution of Ohio has declared very definitely that if those responsible for the management of a building and loan association (which are the stockholders) receive money on deposit, they are individually liable to the creditors in double the par value of the stock.

Enough has been said to indicate the views of the court on the issue raised by the demurrer, and the same will be overruled, with exceptions.